Mario A. Carrión and Petra Meléndez Caballer, Petitioners and Appellants, *v.* Ana and Adela Meléndez Caballer, Opponents and Appellees.

No. R-66-136.     Decided May 27, 1969.

*Gregorio Ramos Rivera* for appellants. *Félix A. Ramos Cabán* for appellees.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

PER CURIAM: Appellants requested the Superior Court, Humacao Part, to declare established in their favor the ownership of a 104.20 square meters lot situated in the ward "Húcares" of Naguabo.

They alleged that they had acquired said lot by purchase from Adela, Juan, Manuel, Luis, Ana, Cándido (all surnamed Meléndez Caballer), Francisco Meléndez Sánchez, and Constancia Meléndez Widow of Corsino, by deeds No. 68 of July 28, 1957, No. 70 of October 4, 1958, No. 68 of October 2, 1958, No. 50 of July 21, 1958, executed before notary Gregorio Ramos Rivera, and deed No. 1 of January 4, 1958 executed before notary Ángel Fernández Ortiz, and that these previous owners had acquired it as heirs of Ventura Meléndez, who

died on October 22, 1945, and who had owned it for more than 30 years.

Ana and Adela Meléndez Caballer appeared as opponents. They denied having sold their hereditary shares in the lot to petitioners, and as a defense they alleged that the lot subject to the dominion title proceeding belongs to the heirs of Manuel Ventura Meléndez and Julia Caballer and that the deeds related in the petition, especially No. 68 of July 28, 1957 executed before notary Gregorio Ramos, are null since no consideration whatsoever existed for its execution, and that they were especially executed by opponents in order to expedite a loan, which the petitioner had to make for the payment of debts. They also alleged that Ana Meléndez Caballer was mentally ill on the date on which the deed of sale was executed.

A trial having been held, the court rendered judgment dismissing the petition for the Dominion Title Proceeding, declaring null and void the deed of sale executed between petitioners and opponents Ana and Adela Meléndez Caballer, for lack of cause or consideration in the same. In rendering judgment the court made the following findings of fact:

"1. Manuel Ventura Meléndez, known as Ventura Meléndez, and Julia Caballer were married having begotten the following children: Constancia, Francisco, Cándido, Alicia, Luis, Manuel, Adela, Ana, and Petra, all surnamed Meléndez Caballer. Manuel k/a Ventura Meléndez died on October 23, 1945. His wife, Julia Caballer, had died on November 26, 1941.

"2. Manuel k/a Ventura Meléndez and Julia Caballer at the time of their deaths were owners of a parcel of land which consisted of 2 lots situated in the ward Húcares of Naguabo, Puerto Rico. The real property, object of the action at bar, is one of those 2 lots which is described as follows:

'URBAN: Lot located in the ward Húcares of Naguabo, Puerto Rico with an area of 120.08 square meters, adjacent by the north and the east at distances of 11.585 and 10.365 meters respectively, to Juan Cortés; by the south it faces the Highway of Naguabo to Fajardo at a distance of 11.585

meters and by the west at a distance of 10.365 adjacent to Alberto R. Fuertes. In this lot there is a cement building with a zinc roof of 24 by 34 feet with an extended structure [*martillo anexo*] of 24 by 6¾ inches. I mean feet.'

"3. Mario Carrión is married to Petra Meléndez Caballer who is one of the heirs of Meléndez Caballer.

"4. Mario Carrión and Petra Meléndez Caballer live in the aforedescribed lot object of the judicial controversy in the instant case, since or about the year 1947. The other heirs have lived, some in the United States, and others outside the jurisdiction of Naguabo, Puerto Rico.

"5. In or about the year 1957 and because of the fact that Mario Carrión and his wife Petra Meléndez Caballer were interested in obtaining a loan for a certain amount of money in order to build the commercial building which at present they own and manage in said lot named 'Brisas del Caribe', they requested and obtained from all the heirs of Manuel Meléndez and Julia Caballer to transfer to them their undivided shares in the referred lot in order to make easier the obtention of enough credit to carry out the construction of the building.

"6. In a meeting held between the opponents, Ana and Adela Meléndez Caballer, with their sister Petra Meléndez Caballer and the husband of the latter, Mario A. Carrión, the opponents Ana and Adela Meléndez Caballer reiterated to petitioners their refusal to sell their undivided shares in said property, but they agreed to sign a document by which the way and manner in which to carry out their project for constructing a building would be made easier to Mario Carrión and their sister, the former's wife.

"7. There existing no consideration whatsoever, without being duly oriented about the contents of the document, and with the sole and only purpose of making easier the manner in which to carry out the construction work which petitioners intended to undertake, they signed deed No. 68 executed on July 28, 1957, in Naguabo, Puerto Rico, before notary Gregorio Ramos Rivera. By virtue of that same document Luis Meléndez Caballer and Juan Meléndez Caballer sold and transferred their undivided hereditary shares to petitioners.

"8. By virtue of other public documents Alicia Meléndez Caballer, Constancia Meléndez Caballer, Francisco Meléndez Caballer, and Manuel and Cándido Meléndez Caballer, trans-

ferred their respective hereditary shares to Mario Carrión and his wife." (Original record, pp. 97–99.)

The judgment appealed from should be reversed. The evidence introduced by opponents is insufficient at law to annul deed No. 68 executed in Naguabo on July 28, 1957 before Notary Gregorio Ramos Rivera. In said deed the two opponents Adela and Ana Meléndez Caballer appeared together with Luis and Juan Meléndez Caballer and they all sold to petitioner, Mario A. Carrión, their shares of the lot object of the dominion title proceeding for the price of $60, which the vendee paid to the vendors at a rate of $15 to each one before the notary who attested thereto.

In order to overcome what is consigned under notarial attestation in said deed, the opponents introduced the testimonies of Manuel Meléndez Caballer, Constancia Meléndez Caballer, and of Adela Meléndez Caballer.

Manuel, who is not one of the opponents, testified that he had never sold his share in the lot; that Carrión had taken steps to buy it from him but that he had refused; that on one occasion Carmelo Avila had prepared the deed of sale but he did not sign it; that on a certain occasion his sister Petra, Carrión's wife, went to the United States where he lives and asked him to sign an affidavit in order to make a loan to repair the building and he signed it; that although he knows how to read and write he did not read the document very well; that he did not know that with the document which he signed the lot was sold and that he did not receive any money when he signed it; that he learned about the suit when one of his sisters told him that he had to come to testify.

The affidavit to which this witness refers does not bear any relation with deed No. 68, annulled by the trial court, nor was any adjudication made with respect to the sale of his share in the lot made by this witness. Deed No. 68, executed on October 2, 1958 before notary Gregorio Ramos Rivera by virtue of which Juan Meléndez Caballer, as proxy

for Manuel and Cándido Meléndez Caballer, sold their shares in the lot to Mario A. Carrión for $30 which the vendee paid vendors, was introduced in evidence.

Constancia Meléndez, who also does not appear as opponent, testified that she signed a deed in connection with the lot where the business "Brisas del Caribe" owned by Carrión is located; that Carrión went to her house with Gregorio Ramos and told her that he was going to make a loan in order to finish his house and to pay a mortgage and "that he needed the deed and I gave it to him"; that the notary did not explain to her the nature of the deed and that she signed it because Carrión was involved, and the latter told her that it was in order to make a loan; that they did not read the deed to her nor did she receive any money when she signed, that her son, Arturo, who knows how to read and write, and owns a restaurant business, was present, that they brought her another deed of the house where her sister Ana, who was sick, lived and she refused to sign it.

Evidently this witness was referring to deed No. 70 executed on October 4, 1958 before notary Gregorio Ramos, by virtue of which she sold Carrión her share in the lot at a price of $25 which the vendee paid her in cash before the notary.

So that her testimony is not directly related to said deed No. 68 of 1957.

Adela Meléndez Caballer, one of the opponents and one of the grantors of deed No. 68 of 1957, testified that she never sold Carrión her share in the lot and that she has paid the taxes since 1960, that when she came for the first time from the United States in 1957 she signed the aforesaid deed, because her sister Petra told her that she wanted to make a loan to improve her business and to pay a mortgage and she agreed; that she did not receive any money when she signed the deed; that at that date her sister Ana was in her house in bed, and that that sister had been confined in an insane asylum; that she was in Mario Carrión's *cafetín* when they

signed; that the notary did not read the deed; that she knows how to read and write and that her present relations with her brother Luis are not good.

We repeat that this evidence is not sufficient to annul a deed in which the notary attests to the nature of the transaction made between the parties appearing in the same, and attests to the delivery of the price of the sale. The theory that the purpose, in signing that and other deeds of sale, was that Carrión could obtain a loan is discredited by the very evidence of opponents. We will recall that one of the witnesses testified that Carrión had taken steps with him to buy. On the other hand, if, in the year 1957, Carrión needed to make a loan and for that reason he needed a title of the lot in his name, his steps towards that end would have included all the heirs and not only four of them.

One of the grantors of deed No. 68 of 1957, Luis Meléndez Caballer corroborating the notarial attestation testified that the notary read the deed; that he and the other vendors received the selling price in that act, which was $15 for each one. When he was asked why he sold at that price he answered: "At that time it was not worth anything." He also testified that now it is valuable due to the general increase in the value of properties in Puerto Rico.

The opponents did not introduce herein sufficient evidence to overcome the recital contained in the so much mentioned deed No. 68 of 1957 as to the nature and consideration of the contract. See *Ríos et al.* v. *Amorós et al.*, 27 P.R.R. 735 (1919); *Heirs of Delgado* v. *Heirs of Villamil*, 41 P.R.R. 568 (1930); *Puig* v. *Batista*, 46 P.R.R. 883 (1934); *Cortijo* v. *Orta*, 46 P.R.R. 893 (1934); *Acosta* v. *Rosado*, 54 P.R.R. 418, 431 (1939).

The judgment appealed from will be reversed, and the case remanded to the trial court to enter the corresponding order establishing ownership of the property object of this suit in favor of petitioners-appellants.